**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **STEVEN D. GUNN, on behalf of himself and all others similarly situated** | |
| Plaintiff, | CASE NO. |
| vs. | UNITED STATES DISTRICT JUDGE |
| **STERLING INFOSYSTEMS, INC.,** **As successor by Merger to STERLING INFOSYSTEMS-OHIO, INC.,** **Serve:** **Paracorp Incorporated** **4568 Mayfield Road** **# 204** **Cleveland, Ohio 44121,** | |
| **and** | |
| **STERLING INFOSYSTEMS, INC.,** **Serve:** **Paracorp Incorporated** **4568 Mayfield Road** **# 204** **Cleveland, Ohio 44121,** | |
| **and** | |
| **E-VERIFILE.COM, INC.,** **Serve:** **CT Corporation** **1201 Peachtree Street NE** **Atlanta, Georgia 30361** | |
| **and** | |
| **BNSF RAILWAY COMPANY,** **Serve:** **CT Corporation System** **4400 Easton Commons Way** **Suite 125** **Columbus, Ohio 43219** | |

**and**

**NORFOLK SOUTHERN RAILWAY
COMPANY,**
**Serve:**
**Corporation Service Company**
**50 West Broad Street**
**Suite 1330**
**Columbus, Ohio 43215**

**And**

**CANADIAN NATIONAL RAILWAY
COMPANY,**
**Serve:**
**935 de La Gauchetière Street West**
**Montreal, Quebec**
**H3B 2M9**
**Canada**

**and**

**RAILROAD CONTROLS, LP.**
**Serve:**
**Corporation Service Company**
**5760 I-55 North, Suite 150**
**Jackson, MS 39211**

     Defendants.

## CLASS ACTION COMPLAINT
### (Jury Demand Endorsed Hereon)

     Plaintiff, Steven D. Gunn ("Mr. Gunn" or "Plaintiff"), by counsel, seeks judgment

against Defendants and states as follows:

### PRELIMINARY STATEMENT

     1.    This is a lawsuit seeking actual, statutory and/or punitive damages, costs, and

attorney's fees brought pursuant to 15 U.S.C. §§ 1681a–x (the Fair Credit Reporting Act or

"FCRA").

2.      Mr. Gunn applied for employment with Railroad Controls, LP. ("RC").

3.      RC is a contractor that works for BNSF Railway Company ("BNSF"), Norfolk Southern Railway Company ("NS"), and Canadian National Railway Company ("CN") (collectively referred to as "Railroads"). A large portion, if not all, of RC's work is performed on properties owned by the Railroads. RC is required by the Railroads to have all potential employees and existing employees screened by e-Verifile.com, Inc. ("e-Verifile") before the Railroads will grant those potential employees and existing employees access to the Railroads properties.

4.      e-Verifile was hired by the Railroads to furnish a consumer report about Mr. Gunn for an employment purpose. e-Verifile then purchased information about Mr. Gunn from Sterling Infosystems-Ohio, Inc., a company that merged with and operates together with its parent Sterling Infosystems, Inc. (hereafter, collectively "Sterling"). At no time during the process was Mr. Gunn made aware of Sterling's participation in the process.

5.      RC and the Railroads used the consumer report created by Sterling to "adjudicate" Mr. Gunn denying him access to the Railroads' properties and ultimately denying him employment with RC.

6.      The consumer report Sterling created and furnished about Mr. Gunn to e-Verifile falsely branded him a convicted felon. RC and the Railroads, relying on the false consumer report, "adjudicated" Mr. Gunn and took adverse action against him by denying him access to the Railroads' properties and denying him employment with RC. RC and the Railroads took such adverse action against Mr. Gunn without first providing him with a pre-adverse action notice as required by 15 U.S.C. § 1681b(b)(3).

7.      Sterling also failed to provide Mr. Gunn with timely and lawful notice, as

required by 15 U.S.C. § 1681k(a)(1), that it was furnishing a consumer report for an employment purpose at the time that it did so. Sterling purchased inaccurate derogatory public record information and then resold the inaccurate derogatory public record information to their respective users. The 1681k(a)(1) notice is intended to provide consumers immediate notice of the furnishing of the employment report and details necessary to preemptively contact the reporting agency to obtain and, as appropriate, correct information in the furnished report. It was also intended to alert the consumer to the user's use of the report to provide consumers with the opportunity to address any concerns or derogatory history in the report directly with the employer. Sterling's failure to comply with these long standing requirements denied Mr. Gunn these important rights and protections.

8.      Mr. Gunn's also brings claims for e-Verifile.com and Sterling's violation of 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report it furnished about Mr. Gunn.

## JURISDICTION

9.      The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

## PARTIES

10.     Mr. Gunn is a natural person and a "consumer" as defined by the FCRA.

11.     Sterling not only transacts business in Ohio, but is principally based here and operates out of this State and Federal District. At all times relevant to this action, Sterling was a "consumer reporting agency" as defined by the FCRA. Sterling is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" to third parties. Sterling regularly furnishes consumer

reports to third-parties under contract for monetary compensation.

12. At all times relevant to this Complaint, RC was a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers", as those terms are defined by 15 U.S.C. § 1681a.

13. At all times relevant to this Complaint, BNSF was a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers", as those terms are defined by 15 U.S.C. § 1681a.

14. At all times relevant to this Complaint, NS was a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers", as those terms are defined by 15 U.S.C. § 1681a.

15. At all times relevant to this Complaint, CN was a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers", as those terms are defined by 15 U.S.C. § 1681a.

## STANDING

16. Article III standing has three elements, as reiterated in *Spokeo, Inc. v. Robins*: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

17. The point of contention in Spokeo was the first of these three elements—injury in fact. The Court stated that "to establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"

18. The Court did not reverse the holding of the Ninth Circuit that plaintiff Robins

had adequately alleged standing.

19.     The Court held that, for standing purposes, concrete injuries include intangible harms. Concrete means "real," not "abstract," but "it is not necessarily synonymous with 'tangible.' ... Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." The Court also held that harm need not have already manifested itself in order to count as concrete. Rather, a "risk of real harm" can satisfy the requirement for concreteness for purposes of Article III.

20.     The Court noted: "Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." An example mentioned by the Court is slander, which is actionable because it is inherently damaging without showing actual damage to reputation, an intangible interest. Similarly, the Court observed that "Many traditional remedies for private-rights causes of action—such as for trespass, infringement of intellectual property, and unjust enrichment—are not contingent on a plaintiff's allegation of damages beyond the violation of his private legal right." The harm can be actionable even if it is "difficult to prove or measure."

21.     Apart from intangible harms that have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," Spokeo also recognized that Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.' "The Court stated: "Congress is well positioned to identify intangible harms that meet minimum Article III requirements, [and] its judgment is also instructive and important." The Court observed that Congress identified

6

such intangible harms in enacting the FCRA: "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." Although "Article III standing requires a concrete injury even in the context of a statutory violation," "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." The Court gave as examples of circumstances in which a plaintiff need not allege anything beyond a statutory violation the right to information that Congress had decided should be made public.

## 1681k(a)(1) and 1681b(b)(3)

22. The FCRA contains a number of requirements for CRAs, furnishers, persons and users to provide notices to consumers. Of those FCRA notices that are privately enforceable, some notices must contain information that is specific to the consumer, such as the 1681k(a)(1) adverse public record information notices and the 1681b(b)(3) "pre-adverse action" employment notices. These notices are "particularized" in that consumers only have the right to receive them when their own personal situation warrants it.

23. Such "notice" or disclosure violations present concrete harm in the form of "informational injury." Failure to provide a notice required by the FCRA results in concrete injury in the form of the failure to receive information that Congress thought the consumer should receive. In Spokeo, the Court specifically noted that information injuries can present concrete harm, citing *Public Citizen v. U.S. Department of Justice*, which held that the plaintiff had standing to challenge the Justice Department's failure to provide access to information, the disclosure of which was required by the Federal Advisory Committee Act, because the inability to obtain such information "constitutes a sufficiently distinct injury to provide standing to sue."

It also cited *Federal Election Commission v. Akins* for a similar point, "confirming that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III."

24.     These cases illustrate that an informational injury (i.e., being denied access to information to which an individual is entitled by statute) is a concrete injury under Article III. The right to such information in the form and manner Congress required creates a right akin to a property interest in the information mandated.  Furthermore, in *Spokeo*, the Court cited the *Public Citizen v. U.S. Department of Justice and Federal Election Commission v. Akins* cases to illustrate instances in which "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury," when "[i]n other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified."   In a number of FCRA cases, courts have found substantive "informational injury" beyond simply a violation of a procedural right, and these cases remain good law after *Spokeo*.

25.     In addition to the informational injury, the failure to give any required disclosure creates the risk of real harm because the absence of the necessary information deprives the consumer of the ability to take actions based on that information.

26.     In this case, as more fully described below, Sterling and e-Verifile created consumer reports that falsely branded Mr. Gunn a felon. Sterling furnished those consumer reports to e-Verifile and e-Verifile, in turn, furnished those consumer reports to, RC, BNSF, NS, and CN. At no point in time prior to the furnishing of those consumer reports did e-Verifile or Sterling provide Mr. Gunn with the information and notices required by Congress under 1681k(a)(1).

27.     In this case, as more fully described below, RC, BNSF, NS and CN used

consumer reports that falsely branded Mr. Gunn a felon. RC, BNSF, NS and CN took adverse action against Mr. Gunn by denying him access to the Railroads' properties and denying him employment with RC. RC, BNSF, NS and CN took such adverse action against Mr. Gunn without first providing him with a pre-adverse action notice as required by 1681b(b)(3). Mr. Gunn was denied access to information and notices required by Congress under 1681b(b)(3).

28.     Mr. Gunn has suffered an injury in fact that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical. All Defendants, denied Mr. Gunn access to information to which he was entitled by statute, which precluded Mr. Gunn from taking the necessary steps to have the false consumer reports corrected before any adverse action was taken against him.

29.     The challenged conduct, the failure to provide Mr. Gunn access to information in which he was entitled to by statute, is fairly traceable to each defendant individually.

30.     The challenged conduct is likely to be redressed by a favorable judicial decision.

31.     Mr. Gunn has standing to bring this lawsuit as all three elements of Article III standing are present.

## BACKGROUND

32.     e-Verifile is a consumer reporting agency that offers a program to its railroad clients named e-RAILSAFE which is a background screening program that is designed to serve "Class 1 Railroads" with operations in the United States.

33.     According to e-Verifile, the following railroads participate in the e-RAILSAFE program including: BNSF, Canadian Pacific, Canadian National, Conrail, Norfolk Southern, and Union Pacific.

34.     These railroads then hire contractors, such as RC, to work on their properties.

Every person that works for these contractors must submit to background screening.

35.     The e-RAILSAFE program allows each railroad to monitor and maintain a history of anyone that has had or currently maintains access to their property. All contract personnel must undergo a background check and receive a proper identification badge to gain access to the railroad property.

36.     Consumers are instructed to sign a written consent form agreeing to the procurement of a consumer report through e-Verifile which states, in pertinent part as follows:

> I, the undersigned, hereby consent and authorize _____, its affiliated companies, and/or its agents (collectively, herein after referred to as "the Company") to obtain information about me from a consumer reporting agency for employment purposes. I understand that this means that a "consumer report" and/or an "investigative consumer report" may be requested…
>
> The Company also reserves the right to share background investigation results with any third-party companies for whom I will be placed to work with as a representative of the Company….
>
> I AUTHORIZE E-VERIFILE TO OBTAIN A CONSUMER REPORT AND/OR INVESTIGATIVE CONSUMER REPORT ON ME…

37.     Nowhere on this written consent form is Sterling or the Railroads disclosed. Consumers have no idea that Sterling is involved in the process even though Sterling is the consumer reporting agency actually creating the background consumer reports. Consumers have no idea that the Railroads are involved in the process even though the Railroads are the persons actually "adjudicating" the adverse employment decision.

38.     The e-RAILSAFE program lists the following criteria for denial of access to any railroad properties:

- Conviction of a felony offense in the last 7 years

- Release from a penal institution/probation/parole in the last 5 years

- Active misdemeanor and felony warrants

- ▪ Any pending felony charge

- ▪ Social Security fraud alerts

- ▪ A history of crimes of concern

- ▪ Out of service area

- ▪ Permanent Disqualifier

- ▪ Background Check canceled by Contractor

39.     Any consumer that is denied access through one of the above listed items is supposed to be notified in writing of the final denial decision by a uniform written adverse action notice. However, more often than not, the potential employer or employer is the only one provided with the uniform written adverse action notice. Consumers are then told verbally about the adverse action.

40.     When a consumer is denied access, the e-RAILSAFE program automatically creates the uniform written adverse action notice which states, in pertinent part as follows:

> Your e-RAILSAFE application for access to [**NAME OF RAILROAD**] property has been **denied**, and, therefore, you are ineligible to receive the required security clearance.
>
> **You were disqualified because of the following reason(s):**
> (emphasis in original).

41.     Nowhere on this uniform written adverse action notice is Sterling disclosed. At this point in the process, Consumers still have no idea that Sterling is the consumer reporting agency actual creating the background consumer reports.

42.     The e-RAILSAFE program strictly adheres to its criteria for denial of access, as required by the Railroads, and there is no discretion as to how the criteria are applied.

11

43.     The Railroads review the results of the background consumer reports and adjudicates or codes the consumer as "denied" or "approved". Such adverse action is always taken without first providing the consumer with a pre-adverse action notice as required by 15 U.S.C. § 1681b(b)(3).

44.     The railroads that participate in the e-RAILSAFE program are responsible for the screening criteria listed above.

45.     The potential employers or employers are required to accept the results from the e-RAILSAFE background consumer reports as true and are required to bar or remove any denied consumers from the Railroads' properties.  Denied access to these properties is tantamount to the denial of employment.

46.     At no point in time are any FCRA notices sent to the consumer.

47.     At no point in time are consumers made aware that Sterling is the consumer reporting agency actually creating the background consumer reports. All "appeals", questions or other inquiries are directed to e-Verifile, RC or the Railroads (never Sterling).

## MR. GUNN'S FACTS

48.     In or around March 2016, Mr. Gunn sought employment with RC. RC is a contractor that conducts most, if not all, of its business on property owned and controlled by the Railroads.

49.     As part of the application process, Mr. Gunn was required to sign a written consent form agreeing to the procurement of a background consumer report through e-Verifile. This written consent form never disclosed Sterling as the consumer reporting agency that would be creating and furnishing the background consumer report.

50.     Ultimately, RC, using the e-RAILSAFE program, ordered a background

consumer report about Mr. Gunn.

51.     On or around February 28, 2016, e-Verifile received the order for Mr. Gunn's background consumer report through the e-RAILSAFE program.  The permissible purpose to access Mr. Gunn's background consumer report was employment related.

52.     e-Verifile then purchased criminal and traffic public record information about Mr. Gunn from Sterling and, in turn, resold that information to RC and the Railroads as its own e-Verifile background consumer report. This transaction was never disclosed to Mr. Gunn. Mr. Gunn was not aware that Sterling was the consumer reporting agency that actually created the background consumer reports about him.

53.     On or around March 5, 2016, Sterling, through e-Verifile, furnished a back ground consumer report that contained public record information likely to have an adverse effect upon Mr. Gunn's ability to obtain employment.

54.     e-Verifile resold this information from Sterling to RC and the Railroads for an employment purpose. e-Verifile was both a user of Mr. Gunn's consumer report as well as a consumer reporting agency.

55.     Sterling knew that the consumer report it was selling to e-Verifile, and ultimately RC and the Railroads, was being used for an employment purpose.

56.     Despite providing a consumer report for an employment purpose to users, which consumer reports contained public record information likely to have an adverse effect upon consumers' ability to obtain employment, e-Verifile and Sterling failed to provide notice to Mr. Gunn that they were doing so, along with the name and address of the person or company to whom such information was being reported.

57.     On or about March 7, 2016, RC received three separate and distinct standard

written adverse action notices (as further described in paragraph 40 above) from BNSF, NS, and CN through the e-RAILSAFE program that stated Mr. Gunn was a convicted felon and that he was denied access to railroad property. Such a denial was tantamount to the denial of employment

58.     The felony conviction appearing on Mr. Gunn's background consumer report was false at the time it was reported. The information reported was not accurate, complete or up-to-date as required by the FCRA.

59.     On or about the time the standard written adverse action notices were dated; Mr. Gunn was denied employment by RC.

60.     Sterling and e-Verifile created consumer reports that falsely branded Mr. Gunn a felon. Sterling furnished those consumer reports to e-Verifile and e-Verifile, in turn, furnished those consumer reports to, RC, BNSF, NS, and CN. At no point in time prior to the furnishing of those consumer reports did Sterling provide Mr. Gunn with the information and notices required by Congress under 1681k(a)(1).

61.     Upon information and belief, Mr. Gunn alleges that Sterling did not attempt to follow the option available at 15 U.S.C. §1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of public records information (e.g. the Clerk of the Court) and to do so immediately before furnishing a report which includes such information.

62.     The records Sterling obtained were incomplete and inaccurate. They did not obtain the full criminal or traffic file or all of the consumers' personal identifiers in the file.

63.     Section 1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

64.     RC, BNSF, NS and CN used consumer reports that falsely branded Mr. Gunn a

14

felon. RC, BNSF, NS and CN took adverse action against Mr. Gunn by denying him access to the Railroads' properties and denying him employment with RC. RC, BNSF, NS and CN took such adverse action against Mr. Gunn without first providing him with a pre-adverse action notice as required by 1681b(b)(3). Mr. Gunn was denied access to information and notices required by Congress under 1681b(b)(3).

65.    The FCRA defines an adverse action as "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee," or any "action taken or determination that is . . . adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(ii), (iv).

66.    Sterling, e-Verifile, RC and the Railroads' conduct against Mr. Gunn was willful.

67.    Sterling, e-Verifile, RC and the Railroads' procedures and conduct were carried out as intended and were not a mere accident or mistake. Instead, its actions constituted its standard procedures and policies of conducting business.

68.    Sterling, e-Verifile, RC and the Railroads are well aware of its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and the Consumer Financial Protection Bureau.

69.    Further, Sterling, e-Verifile, RC and the Railroads obtained or had available substantial written materials that informed it of its duties under the FCRA.

70.    Sterling, e-Verifile, RC and the Railroads' conduct was willful and entitles Mr. Gunn to recover punitive damages for its violations of the FCRA.

71.    Sterling and e-Verifile furnished a background consumer report regarding Mr. Gunn that stated that he was a convicted felon. This was not accurate, complete or up-to-date at

the time the report was furnished.

72.    In furnishing this inaccurate consumer report about Mr. Gunn, Sterling and e-Verifile failed to follow reasonable procedures to assure maximum possible accuracy of the information in the consumer report.

73.    As a matter of practice, Sterling and e-Verifile regularly and consistently fail to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports and credit files they publish and maintain concerning consumers as required by 15 U.S.C. § l681e(b).

74.    As a result of Sterling and e-Verifile's actions, Mr. Gunn suffered actual damages.

### COUNT I: VIOLATION OF 15 U.S.C. § 1681k(a)
### Individual Claim against Sterling

75.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

76.    On or about February 28, 2016, Sterling created a consumer report for an employment purpose that stated Mr. Gunn was a convicted felon. This reporting was not complete, accurate or up-to-date.

81.    On or about March 5, 2016, Sterling, a "consumer reporting agency", furnished a "consumer report" about Mr. Gunn, which contained matters of public record information (i.e. a felony conviction) that was likely to have an adverse effect upon Mr. Gunn's ability to obtain employment, to e-Verifile, RC and/or the Railroads, "users", for "employment purposes".

82.    Sterling failed to notify Mr. Gunn, at the time, that it furnished such adverse public record information about him to e-Verifile, RC and/or the Railroads. Sterling further failed to provide Mr. Gunn with the information required by 15 U.S.C. § 1681k(a)(1) at this time.

83.     Mr. Gunn was unlawfully denied necessary information and details to preemptively contact e-Verifile, RC and/or the Railroads and provide them with complete, accurate and up-to-date public record information.

84.     Sterling's failure to comply with these long standing requirements denied Mr. Gunn important rights and protections afforded to him under the FCRA.

85.     As a result of this conduct by Sterling, Mr. Gunn suffered actual damages such as economic and non-economic damages.

86.     Sterling furnished a report that was not accurate, complete and up to date.

87.     In furnishing the inaccurate report, Sterling failed to maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. It also failed to, at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported.

88.     As a matter of practice, Sterling regularly and consistently fails to comply with 1681k(a)(2).

89.     As a matter of practice, Sterling regularly and consistently fails to comply with 1681k(a)(1).

90.     In this case, Sterling's procedures and conduct were carried out as intended and do not amount to accidents or mistakes.

91.     Sterling is aware of its legal obligations under the FCRA and has obtained substantial written information regarding its duties.

92.     Despite these obligations, Sterling acted consciously and willfully in breaching its obligations.

93.     Sterling's conduct, in this case, is consistent with its established and systematically executed procedures.

94.     Sterling's conduct in this case was willful.

95.     Sterling's violations of 15 U.S.C. § 1681k(a) were willful, rendering it liable pursuant to 15 U.S.C. §1681n.  In the alternative, Sterling was negligent, entitling Mr. Gunn to recover under 15 U.S.C. §1681o.

96.     Mr. Gunn is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from Sterling in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT II: Violation of 15 U.S.C § 1681e(b)**
**Individual Claim against Sterling and e-Verifile**

97.     Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

98.     Sterling and e-Verifile violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report they furnished regarding Mr. Gunn.

99.     Sterling and e-Verifile furnished a consumer report for an employment purpose containing an objectively incorrect felony conviction.

100.    As a result of this conduct by Sterling and e-Verifile, Mr. Gunn suffered actual damages such as economic and non-economic damages.

101.    Sterling and e-Verifile's violations of 15 U.S.C. §1681e(b) were willful, rendering them liable pursuant to 15 U.S.C. §1681n.  In the alternative, Sterling and e-Verifile were

negligent, entitling Mr. Gunn to recover under 15 U.S.C. §1681o.

102.    Mr. Gunn is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from Sterling and e-Verifile in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

### COUNT III: VIOLATION OF 15 U.S.C. § 1681b(b)(3)
### Class Claim against RC

103.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

104.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Mr. Gunn brings this action for himself and on behalf of a class (the "RC Class") against RC, defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) within the two years immediately preceding the filing of this Complaint; (a) who authorized e-Verifile to obtain a consumer report for an employment purpose; (b) where RC used the e-RAILSAFE program to evaluate such person's consumer report; (c) such consumer report included at least one criteria for denial of access to any one of the Railroads' properties; (d) RC relying on such consumer report, in whole or in part; took adverse action against such person; and (f) where RC failed to provide such person with a copy of their e-Verifile consumer report and a description in writing of the rights of such person under 1681g(c)(3) before taking such adverse action.

105.    **Numerosity.  FED. R. CIV. P. 23(a)(1).** The RC Class is so numerous that joinder of all is impractical. Plaintiff estimates that the RC Class is comprised of potentially dozens of consumers. The names and addresses of the RC Class members are identifiable through documents maintained by RC and the RC Class members may be notified of the pendency of this action by published and/or mailed notice.

106.    **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the RC Class.

These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether RC provided the required 1681b(b)(3) documents to the applicant or employee prior to taking adverse action against the applicant or employee based on the results thereof; (b) whether RC's conduct violated the FCRA; and (c) whether RC acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

107.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each RC Class member and all are based on the same facts and legal theories. Upon information and belief, it is RC's standard practice to obtain and rely on consumer reports for employment purposes, taking adverse action against applicants without giving them any advance notice of the adverse action, without first providing them with a copy of their consumer report before taking the adverse action. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the RC Class.

108.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the RC Class. Plaintiff has retained Counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his Counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

109.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the RC Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation

necessitated by RC's conduct. It would be virtually impossible for the members of the RC Class, individually, to redress effectively the wrongs done to them. Even if the members of the RC Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by RC's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

110.    Further, the Court is able to certify a liability-only class pursuant to Fed. R. Civ. P. 23(c)(4).

111.    **Injunctive Relief Appropriate for the Class.  Fed. R. Civ. P. 23(b)(2).** Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual RC Class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

112.    Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that RC acted on grounds generally applicable to the Class thereby making appropriate declaratory relief with respect to the Class as a whole.

113.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.    As alleged above, the questions of law or fact common to the members of the RC Class predominate over any questions affecting an individual member. Each of the

common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by RC's FCRA violations would likely be unaware of their rights under the law, or of whom could represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources as it increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by RC's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

114. RC's failure to timely provide the required FCRA notices to Plaintiff and the putative the RC Class members violated 15 U.S.C. § 1681b(b)(3).

115. The conduct, actions, and inaction of RC were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

116. Plaintiff and other members of the RC Class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from RC in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

117.    As a result of these FCRA violations, RC is liable to Plaintiff and to each RC

Class member, for statutory damages from $100 to $1,000, punitive damages, and for their

attorney's fees and costs.

**COUNT IV: VIOLATION OF 15 U.S.C. § 1681b(b)(3)**
**Class Claim against BNSF**

118.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth

at length herein.

119.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Mr. Gunn brings this

action for himself and on behalf of a class (the "BNSF Class") against BNSF defined as follows:

> All natural persons residing in the United States (including all
> territories and other political subdivisions of the United States)
> within the two years immediately preceding the filing of this
> Complaint; (a) who authorized e-Verifile to obtain a consumer
> report for an employment purpose; (b) where BNSF used the e-
> RAILSAFE program to evaluate such person's consumer report;
> (c) such consumer report included at least one of BNSF's criteria
> for denial of access to its property; (d) BNSF, intending to take
> such adverse action, automatically caused the e-RAILSAFE
> program to generate the uniform, written adverse-action notice
> denying access to its property; (e) such adverse action was based in
> whole, or in part, on the consumer report; and (f) BNSF failed to
> provide such person with a copy of their e-Verifile consumer
> report and a description in writing of the rights of such person
> under 1681g(c)(3) before taking such adverse action.

120.    **Numerosity.  FED. R. CIV. P. 23(a)(1).** The Class Members are so numerous that

joinder of all is impractical. Plaintiff estimates that the BNSF Class is comprised of potentially

hundreds if not thousands of consumers. The names and addresses of the BNSF Class Members

are identifiable through documents maintained by BNSF and the BNSF Class Members may be

notified of the pendency of this action by published and/or mailed notice.

121.    **Existence and Predominance of Common Questions of Law and Fact.  Fed.**

**R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the BNSF

23

Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether BNSF provided the required 1681b(b)(3) documents to the applicant or employee prior to taking adverse action against the applicant or employee based on the results thereof; (b) whether BNSF's conduct violated the FCRA; and (c) whether BNSF acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

122.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each BNSF Class Member and all are based on the same facts and legal theories. Upon information and belief, it is BNSF's standard practice to obtain and rely on consumer reports for employment purposes, taking adverse action against applicants without giving them any advance notice of the adverse action, without first providing them with a copy of their consumer report before taking the adverse action. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the BNSF Class.

123.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the BNSF Class. Plaintiff has retained Counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his Counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

124.    **Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the BNSF Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation

24

necessitated by BNSF's conduct. It would be virtually impossible for the members of the BNSF Class, individually, to redress effectively the wrongs done to them. Even if the members of the BNSF Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by BNSF's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

125.    Further, the Court is able to certify a liability-only class pursuant to Fed. R. Civ. P. 23(c)(4).

126.    **Injunctive Relief Appropriate for the Class.  Fed. R. Civ. P. 23(b)(2).** Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual BNSF Class Members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

127.    Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that BNSF acted on grounds generally applicable to the Class thereby making appropriate declaratory relief with respect to the Class as a whole.

128.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.    As alleged above, the questions of law or fact common to the members of the BNSF Class predominate over any questions affecting an individual member. Each of the

common facts and legal questions in the case overwhelm the more modest individual damages issues. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

        b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by BNSF's FCRA violations would likely be unaware of their rights under the law, or of whom could represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources as it increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by BNSF's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

129.    BNSF's failure to timely provide the required FCRA notices to Plaintiff and the putative Class Members violated 15 U.S.C. § 1681b(b)(3).

130.    The conduct, actions, and inaction of BNSF were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

131.    Plaintiff and other members of the BNSF Class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from BNSF in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

132.    As a result of these FCRA violations, BNSF is liable to Plaintiff and to each

1681b Class Member, for statutory damages from $100 to $1,000, punitive damages, and for

their attorney's fees and costs.

### COUNT V: VIOLATION OF 15 U.S.C. § 1681b(b)(3)
### Class Claim against NS

133.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth

at length herein.

134.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Mr. Gunn brings this

action for himself and on behalf of a class (the "NS Class") against NS defined as follows:

> All natural persons residing in the United States (including all
> territories and other political subdivisions of the United
> States) within the two years immediately preceding the filing of this
> Complaint; (a) who authorized e-Verifile to obtain a consumer
> report for an employment purpose; (b) where NS used the e-
> RAILSAFE program to evaluate such person's consumer report;
> (c) such consumer report included at least one of NS's criteria for
> denial of access to its property; (d) NS, intending to take such
> adverse action, automatically caused the e-RAILSAFE program to
> generate the uniform, written adverse-action notice denying access
> to its property; (e) such adverse action was based in whole, or in
> part, on the consumer report; and (f) NS failed to provide such
> person with a copy of their e-Verifile consumer report and a
> description in writing of the rights of such person under
> 1681g(c)(3) before taking such adverse action.

135.    **Numerosity.  FED. R. CIV. P. 23(a)(1).** The Class Members are so numerous that

joinder of all is impractical. Plaintiff estimates that the NS Class is comprised of potentially

hundreds if not thousands of consumers. The names and addresses of the NS Class Members are

identifiable through documents maintained by NS and the NS Class Members may be notified of

the pendency of this action by published and/or mailed notice.

136.    **Existence and Predominance of Common Questions of Law and Fact.  Fed.**

**R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the NS Class.

These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether NS provided the required 1681b(b)(3) documents to the applicant or employee prior to taking adverse action against the applicant or employee based on the results thereof; (b) whether NS's conduct violated the FCRA; and (c) whether NS acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

137.    **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each NS Class Member and all are based on the same facts and legal theories. Upon information and belief, it is NS's standard practice to obtain and rely on consumer reports for employment purposes, taking adverse action against applicants without giving them any advance notice of the adverse action, without first providing them with a copy of their consumer report before taking the adverse action. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the NS Class.

138.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the NS Class. Plaintiff has retained Counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his Counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

139.    **Superiority.  Fed. R. Civ. P. 23(b)(3).**  Questions of law and fact common to the NS Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation

necessitated by NS's conduct. It would be virtually impossible for the members of the NS Class, individually, to redress effectively the wrongs done to them. Even if the members of the NS Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by NS's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

140.    Further, the Court is able to certify a liability-only class pursuant to Fed. R. Civ. P. 23(c)(4).

141.    **Injunctive Relief Appropriate for the Class.  Fed. R. Civ. P. 23(b)(2).** Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual NS Class Members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

142.    Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that NS acted on grounds generally applicable to the Class thereby making appropriate declaratory relief with respect to the Class as a whole.

143.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

        a.    As alleged above, the questions of law or fact common to the members of the NS Class predominate over any questions affecting an individual member. Each of the

common facts and legal questions in the case overwhelm the more modest individual damages issues.  Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

        b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by NS's FCRA violations would likely be unaware of their rights under the law, or of whom could represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources as it increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by NS's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

144.    NS's failure to timely provide the required FCRA notices to Plaintiff and the putative Class Members violated 15 U.S.C. § 1681b(b)(3).

145.    The conduct, actions, and inaction of NS were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

146.    Plaintiff and other members of the NS Class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from NS in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

147. As a result of these FCRA violations, NS is liable to Plaintiff and to each 1681b Class Member, for statutory damages from $100 to $1,000, punitive damages, and for their attorney's fees and costs.

### COUNT VI: VIOLATION OF 15 U.S.C. § 1681b(b)(3)
### Class Claim against CN

148. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

149. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Mr. Gunn brings this action for himself and on behalf of a class (the "CN Class") against CN defined as follows:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) within the two years immediately preceding the filing of this Complaint; (a) who authorized e-Verifile to obtain a consumer report for an employment purpose; (b) where CN used the e-RAILSAFE program to evaluate such person's consumer report; (c) such consumer report included at least one of CN's criteria for denial of access to its property; (d) CN, intending to take such adverse action, automatically caused the e-RAILSAFE program to generate the uniform, written adverse-action notice denying access to its property; (e) such adverse action was based in whole, or in part, on the consumer report; and (f) CN failed to provide such person with a copy of their e-Verifile consumer report and a description in writing of the rights of such person under 1681g(c)(3) before taking such adverse action.

150. **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class Members are so numerous that joinder of all is impractical. Plaintiff estimates that the CN Class is comprised of potentially hundreds if not thousands of consumers. The names and addresses of the CN Class Members are identifiable through documents maintained by CN and the CN Class Members may be notified of the pendency of this action by published and/or mailed notice.

151. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the CN Class.

These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether CN provided the required 1681b(b)(3) documents to the applicant or employee prior to taking adverse action against the applicant or employee based on the results thereof; (b) whether CN's conduct violated the FCRA; and (c) whether CN acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

152. **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of the claims of each CN Class Member and all are based on the same facts and legal theories. Upon information and belief, it is CN's standard practice to obtain and rely on consumer reports for employment purposes, taking adverse action against applicants without giving them any advance notice of the adverse action, without first providing them with a copy of their consumer report before taking the adverse action. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the CN Class.

153. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the CN Class. Plaintiff has retained Counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor his Counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of his responsibilities to the putative class and has accepted such responsibilities.

154. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the CN Class Members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation

necessitated by CN's conduct. It would be virtually impossible for the members of the CN Class, individually, to redress effectively the wrongs done to them. Even if the members of the CN Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by CN's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

155.    Further, the Court is able to certify a liability-only class pursuant to Fed. R. Civ. P. 23(c)(4).

156.    **Injunctive Relief Appropriate for the Class.  Fed. R. Civ. P. 23(b)(2).** Certification of a class under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper. Prosecuting separate actions by or against individual class members would create a risk of adjudications with respect to individual CN Class Members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

157.    Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that CN acted on grounds generally applicable to the Class thereby making appropriate declaratory relief with respect to the Class as a whole.

158.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a.    As alleged above, the questions of law or fact common to the members of the CN Class predominate over any questions affecting an individual member. Each of the

common facts and legal questions in the case overwhelm the more modest individual damages issues.  Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

b.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers affected by CN's FCRA violations would likely be unaware of their rights under the law, or of whom could represent them in federal litigation. Additionally, individual litigation of the uniform issues in this case would be a waste of judicial resources as it increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by CN's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law as for every similarly situated consumer.

159.    CN's failure to timely provide the required FCRA notices to Plaintiff and the putative Class Members violated 15 U.S.C. § 1681b(b)(3).

160.    The conduct, actions, and inaction of CN were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

161.    Plaintiff and other members of the CN Class are entitled to recover costs and attorney's fees as well as appropriate equitable relief from CN in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

162.     As a result of these FCRA violations, CN is liable to Plaintiff and to each 1681b Class Member, for statutory damages from $100 to $1,000, punitive damages, and for their attorney's fees and costs.

**WHEREFORE**, Plaintiff, STEVEN D. GUNN, requests the following relief:

A.     That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the classes;

B.     That judgment be entered for Mr. Gunn individually against Sterling for actual, statutory and punitive damages for its violations of 15 U.S.C. § 1681k(a)(1), pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

C.     That judgment be entered for Mr. Gunn individually against Sterling and e-Verifile for actual, statutory and punitive damages for their violations of 15 U.S.C. §1681e(b), pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

D.     That judgment be entered for the 1681b(b)(3) classes against RC, BNSF, NS and CN for statutory and punitive damages for their violations of 15 U.S.C. § 1681b, pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

E.     That the Court award costs and reasonable attorney's fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and

F.     That the Court grant such other and further relief, including equitable and injunctive relief, as may be just and proper.

## DEMAND FOR TRIAL BY JURY

Mr. Gunn demands trial by jury as to all issues against Defendants.

Respectfully submitted,

O'TOOLE, McLAUGHLIN, DOOLEY
& PECORA CO., LPA.

By:    /s/ Matthew A. Dooley
         Matthew A. Dooley (0081482)
         Stephen M. Bosak (0092443)
         5455 Detroit Road
         Sheffield Village, Ohio  44054
         Telephone:     (440) 930-4001
         Facsimile:     (440) 934-7208
         Email:        mdooley@omdplaw.com
                    sbosak@omdplaw.com

         John C. Bazaz*
         LAW OFFICES OF JOHN C. BAZAZ, PLC
         4000 Legato Road,
         Suite 1100
         Fairfax, Virginia 22033
         Telephone:     (703) 272-8455
         Facsimile:     (703) 596-4555
         Email:        jbazaz@bazazlaw.com

         *Counsel for Steven Gunn and the putative class*

         *\*Pro Hac Admission to be filed*